## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

CRYSTAL LYNN DEAN PERKINS,   )
                                   )
        Plaintiff,           )
                                   )
v.                               )   Case No. 4:24-cv-01183-SGC
                                   )
COMMISSIONER, SOCIAL        )
SECURITY ADMINISTRATION,   )
                                   )
        Defendant.        )

### MEMORANDUM OPINION[1]

The plaintiff, Crystal Lynn Dean Perkins, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under Title II of the Social Security Act. (Doc. 1).[2] Perkins timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). As explained below, the Commissioner's decision is due to be reversed and remanded.

## I.    Background and Procedural History

Perkins has a high school education and completed a year of college; she

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). (Doc. 8).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: (Doc. __ at __). Citations to the administrative record (Doc. 6) refer to the page numbers assigned by the Commissioner and appear as: (R.__).

worked as a customer service representative, unit clerk, and administrative assistant. (R. 64-65, 355).   Perkins's September 28, 2020 application alleged disability beginning on May 8, 2020, due to diabetes, arthritis, and back problems, including: herniated discs, bulging discs, and degenerative disc disease ("DDD").   (R. 83). Perkins was 35 at her date of alleged disability onset.  (R. 82).  After her claim was denied initially and on reconsideration, Perkins requested a hearing before an Administrative Law Judge ("ALJ").  (*See* R. 90, 104, 116-22, 129-30).   Following the hearing, the ALJ issued an unfavorable decision on July 17, 2023.  (R. 11-22; *see* R. 41-81).  The Appeals Council denied review, and Perkins initiated the instant appeal.  (R. 1-7; Doc. 1).  This matter is briefed and ripe for judicial review.   (*See* Docs. 9, 15).

## II.    Statutory and Regulatory Framework, and the ALJ's Decision

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  A claimant must also show she was disabled between her alleged disability onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211

(11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for benefits.  20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Perkins did not engage in substantial gainful activity since her alleged onset date of May 8, 2020.  (R. 13).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(ii) and (c).  At the second step, the ALJ determined Perkins has the severe impairments of DDD of the cervical and lumbar spine, diabetes mellitus II, and obesity.  (R. 14).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of

impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. § 404.1520(a)(4)(iii).   If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Perkins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (R. 15).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.   20 C.F.R. § 404.1520(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 404.1520(a)(4)(iv) and (e).  If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ concluded Perkins has the RFC to perform a limited range of sedentary work.  Specifically, the ALJ determined Perkins:

> . . . must be permitted the option to sit or stand for one to two minutes at a time while remaining on task.  She frequently can balance and kneel; and she occasionally can climb ramps and stairs, stoop, crouch, and crawl.  The claimant should avoid concentrated vibrations such as

4

using electric hand tools; and she never should climb ladders, ropes, or scaffolds; work at unprotected height; or work around dangerous, moving, unguarded machinery.

(R. 16).  At the fourth step, the ALJ found Perkins could perform her past relevant work as an administrative assistant.  (R. 22).  Accordingly, the ALJ found Perks was not disabled through her date last insured.  (*Id.*).[3]

## III.  Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such

---

[3] Because the ALJ concluded at the fourth step that Perkins could perform her past relevant work and, therefore, is not disabled, she did not proceed to the fifth step, which would have required analysis regarding the availability of other work Perkins could perform in light of her RFC, age, education and work experience.  *See* 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1).

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

Perkins challenges the Commissioner's decision on four grounds: (1) in determining her RFC, the ALJ improperly substituted her judgment for the judgments of medical experts; (2) the ALJ failed to properly consider the opinions of her treating physicians; (3) the ALJ improperly discounted Perkins's subjective complaints of pain; and (4) the Appeals Council should have vacated the ALJ's decision. (Doc. 9). The first two arguments largely focus on the opinions and assessments of F. Spain Hodges, M.D., an orthopedic surgeon who performed two operations on Perkins's spine, one in 2020 and another in 2021. (*See* Doc. 9 at 8-

6

18).  As explained below, the court agrees with Perkins that the ALJ's analysis of Dr. Hodges's opinions requires remand for further consideration.  Accordingly, further discussion of the remaining arguments is not required.

Prior to the events leading to this appeal, Perkins underwent back surgeries in 2008 and 2016.  (*See*. R. 519).  Dr. Hodges first treated Perkins around 2015, but, as relevant here, began treating her on May 11, 2020.  (*Id.*).  At the initial 2020 visit, Perkins's chief complaint was numbness in her neck, left arm, and legs, as well as lower back pain sometimes extending to her legs.  (*Id.*).  Perkins demonstrated discomfort with cervical and lumbar spine range of motion but exhibited mostly intact sensation and strength; Dr. Hodges ordered imaging.  (R. 520-21).  An MRI of the cervical spine showed a moderate to large disc protrusion at C5-C6, causing moderate stenosis and a moderate sized central disc protrusion at C6-C7 causing severe stenosis.  (R. 494-95).  Imaging of the lumbar spine showed moderate canal stenosis at L3-L4 and L5-S1 and moderate narrowing of the right lateral recess and right neural foramen at L4-L5.  (R. 493).  Based on these findings, Dr. Hodges recommended cervical spine surgery.  (R. 613).  Dr. Hodges also opined Perkins was unable to work at that time.  (R. 610).

On June 2, 2020, Dr. Hodges performed an anterior cervical discectomy and fusion from C5-C7.  (R. 481).  Two weeks later, Perkins reported having less neck pain and leg numbness but still complained of numbness in her left arm.  (R. 589).

7

During a July 15, 2020 follow-up, Perkins reported lower back pain but stated she did not want to undergo further surgery at that time.  (R. 588).  Dr. Hodges recommended epidural injections for lower back pain.  (*Id.*).  On August 28, 2020, Dr. Hodges noted Perkins continued to report numbness in her left arm and discomfort with range of motion in her neck.  (R. 578).  By September 3, 2020, Perkins reported numbness in her left hand, which Dr. Hodges suspected was being caused by stenosis in her cervical spine.  (R. 554-55).  Dr. Hodges recommended cervical spine surgery, which was postponed due to Perkins's elevated blood sugar. (*Id.* at 555).    On January 26, 2021, Dr. Hodges performed a laminectomy, facetectomy, and foraminotomy on Perkins to provide decompression for severe spinal stenosis at C5-C7.  (R. 762).  At a follow-up appointment on March 10, 2021, Perkins reported improving neck and left arm pain; Dr. Hodges instructed her to resume activities as tolerated.  (R. 808).  During a June 4, 2021 appointment, Dr. Hodges opined Perkins could likely perform a "sedentary office type duty job" so long as it did not require her to bend or twist at the waist, among other lifting and postural limitations.  (R. 809).

At a July 14, 2021 appointment, Perkins reported continued improvement in her cervical spine but worsening and persistent lower back pain and numbness radiating down her left leg.  (R. 810).  Dr. Hodges concluded Perkins could be experiencing persistent herniation at L5-S1 but could not rule out broad based

bulging and stenosis at L4-L5 as causing her symptoms; he recommended a nerve block at L5-S1, and opined Perkins could need an additional surgery to address problems there. (R. 810-12). On September 29, 2021, Dr. Hodges documented Perkins's continued back pain radiating down her leg despite undergoing repeated nerve blocks. (R. 855-56). Dr. Hodges also reported Perkins had applied for Social Security disability benefits and remarked that was "reasonable" given the condition of her cervical and lumbar spine; he continued to assess Perkins as capable of sedentary work with no bending or twisting, among other limitations. (*Id.*).

By March 17, 2022, Perkins was reporting persistent pain in her upper thoracic spine in addition to lower back pain radiating into her left leg. In April 2022, Dr. Hodges reviewed prior imaging and concluded Perkins had "rather advanced degenerative changes for a patient her age." He opined she would likely need additional surgeries to address problems in her neck and lower back. (R. 1175). Additional imaging on January 19, 2023, showed: (1) postsurgical changes at C5-C7, spondylosis at C4-C5; (2) disc extrusion at T5-T6 with mild canal stenosis, small central disc protrusions at T3-T5, and mild to moderate bulging at T9-T10; and (3) postoperative changes at L4-L5 with small recurrent disc protrusion in the right paracentral region. (R. 1171-72, 1339).

The ALJ recounted Perkins's treatment history with Dr. Hodges and noted the restrictions he imposed: sedentary work with lifting restrictions, no bending or

twisting at the waist, and the ability to change positions frequently. (R. 17-19). The ALJ concluded Dr. Hodges's June 2021 opinion was "persuasive" because it was supported by his longitudinal treatment findings and consistent with the observations of other providers, including a physical therapist, a chiropractor, and pain management provider. (R. 18). The ALJ concluded Dr. Hodges's similar September 2021 opinion that Perkins could not bend or twist at the waist was "persuasive" because it was "supported by his examination findings and [] consistent with the observations of other providers of essentially normal strength, sensation, and range of motion of all extremities, despite cervical and lumbar pain with movement." (*Id.*). The only opinion of Dr. Hodges the ALJ rejected was that it was "reasonable" for Perkins to apply for disability. (R. 19).

Despite finding Dr. Hodges's opinions persuasive, the ALJ's RFC determination did not include any limitation on Perkins' ability to bend or twist at the waist. Instead, the ALJ's RFC aligns with the opinion of Sharmishtha Desai, M.D., the state agency medical consultant who reviewed Perkins's medical records on February 20, 2022. (*See* R. 21). Dr. Desai's opinion is silent regarding Perkins's ability to twist or bend at the waist. The ALJ found Dr. Desai's opinion, like Dr. Hodges's opinion, "persuasive." (*Id.*). Specifically, the ALJ found Dr. Desai's opinion was consistent with "evidence of typically normal gait, strength, sensation,

and range of motion of all extremities, despite painful movement of her cervical and lumbar spine." (*Id.*).

During the ALJ hearing the vocational expert testified that, while not evaluated in the Dictionary of Occupational Titles, someone unable to twist likely could not work as an administrative assistant—the only past relevant work the ALJ concluded Perkins could perform. (R. 72-74). Thus, the question of Perkins's ability to twist is crucial to the question of her disability. To that end, the record includes two opinions, both of which the ALJ described as "persuasive": (1) Dr. Hodges's opinion, which precludes Perkins from twisting; and (2) Dr. Desai's opinion, which is silent on the issue. To the extent the ALJ relied on evidence showing Perkins exhibited typically normal gait, strength, sensation, and range of motion of her extremities, these abilities do not shed any light on her ability to twist. *Cf. Helfers v. Commissioner*, No. 23-0730-SGC, 2024 WL 4363175, *5 (N.D. Ala. Sept. 30, 2024) (plaintiff's ability to sit, stand, and walk not probative of her ability to lift).

The SSA's 2017 regulations regarding evaluation of medical opinions govern the opinions at issue here. For claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, an ALJ must consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations,

purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings. *Id.* The most important factors are supportability and consistency. *Bradford v. Soc. Sec. Admin.*, No. 21-00129-LSC, 2022 WL 3036608, at *4 (N.D. Ala. Aug. 1, 2022) ("While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors.") (footnote omitted).

As the regulations explain, the "supportability" factor focuses on the medical opinion at issue and the sources on which it relies. 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Meanwhile "consistency" focuses on the record as a whole and how it compares with the opinion at issue. 20 C.F.R. § 416.920c(c)(1) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

12

Here, the ALJ concluded Dr. Hodges's opinions—aside from his opinion that it was reasonable for Perkins to seek disability—were supported by his treatment records and consistent with the record as a whole.  However, the ALJ did not include Dr. Hodges's twisting limitation in Perkins's RFC.  Under these circumstances, it is simply unclear what rationale the ALJ relied upon in implicitly rejecting Dr. Hodges's persuasive opinion that Perkins was unable to twist at the waist.  Without articulating those reasons, it is not possible to determine whether the ALJ's decision was rational and supported by substantial evidence.  *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (remanding where ALJ credited physician's RFC opinion but did not explain omission of a limitation from the RFC); *Dempsey v. Comm'r of Soc. Sec.*,  454 F. App'x 729, 733 (11th Cir. 2011) (where ALJ did not explain reasons for partial rejection of physician opinion, court could not "affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

## V.    CONCLUSION

Upon review of the administrative record and considering the arguments presented, the court finds the Commissioner's decision is not supported by substantial evidence or in accord with applicable law.  Accordingly, the Commissioner's decision is due

to be reversed and remanded for further proceedings pursuant to sentence four of 42

U.S.C. § 405(g).

A separate order will be entered.

**DONE** this 30th day of September, 2025.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE